Thank you. I call case number 192211, Taylor v. Wilkie. Mr. Carpenter. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Bruce Taylor. This appeal deals with a constitutional question of the denial of due process. The Veterans Court, in Mr. Taylor's view, took too narrow a view of his allegation of his denial of due process. Before this Court, Mr. Taylor presents a freestanding constitutional claim that he was denied due process based upon the secrecy agreement that the Army required him to sign. Mr. Carpenter? Yes, Your Honor. This is Judge Wallach. Yes. On page 12 of the red brief, the government says that, quote, because the Veterans Court held that it did not possess the equitable power to provide relief, and Mr. Taylor did not appeal this holding, in effect, you waived any equitable claim by failure to appeal it. Is the government correct about that? I have to be candid, Your Honor. I'm not sure. It is difficult for me to discern the difference between equity and a constitutional remedy. If there is, in fact, no difference, then it seems to me that there isn't a question of waiver. But it is fair to say that Mr. Taylor does not rely on this brief, or excuse me, in this appeal, to asking this Court for equitable relief short of the relief that should be afforded based upon his denial of due process. Well, the reason I ask that question is, to me, the position in which he was put screams equity. I don't disagree, Your Honor. Do you have to go to due process? Well, the reason, frankly, that I went to due process is I see little clarity in the law as it relates to equity in relationship to the VA, specifically Congress's providing of equitable relief by the Secretary by statute, and whether or not that somehow preempts the Court from providing equitable relief. The Veterans Court has been very narrow in its willingness to accept that they have any equitable powers. So I'll just leave it at that. Okay. Thank you. Thank you, Your Honor. But isn't that really what this case is about, somehow? You don't have to look very deeply into it to see that there's something wrong. Must we go to the Constitution to see whether it can be righted? Well, Your Honor, that's frankly why the appeal was brought. I felt that the consideration below was too narrow and that this is a situation that screams relief. And as I pointed out in my response to Judge Wallach, it just seems there is a lack of clarity in the law as it relates to how or to what extent the Veterans Court does have equitable authority. Mr. Taylor certainly has no problem with this court relying upon the failure of the Veterans Court to afford him equitable relief, short of addressing this as a constitutional question. But to be candid, Your Honor, I'm not sure I would be able to articulate what the difference would be. Well, Mr. Carpenter, part of my problem is that this seems like something that should have been in the takings bucket. In other words, that back or within six years of when he received notice of his right to make a claim and therefore to violate the restrictions on his speech, he could have brought an action against the government then under a taking theory or a tort theory for depriving him of his right to make a claim sooner. Your Honor, I apologize. You are absolutely correct. I have to confess that that did not occur to me. But of course, by the time I got involved in the case, that proverbial horse had already left the barn. I don't disagree with that analysis. But I guess the question that I believe is pertinent for this court to address is what is the role of the Veterans Court in correcting a circumstance such as this? Is it to go to its equitable powers, which it apparently does not feel it as, or that it's more appropriate for constitutional relief, or should the Veterans Court have simply said there is a remedy under the takings clause? How do you deal with our decision in Burris? I mean, we said the court can't expand the scope of its jurisdiction to award substantive monetary relief in the form of equitable relief. That is one of the problems with pursuing this under an equitable theory, Your Honor, which is why I went the due process route. Because I think that Burris can be read to prevent this, although it seems to me that the facts and circumstances of Burris were clearly distinguishable, but the holding is pretty clear. How many Veterans do you think fall within this same category? I mean, how big was this program? I would hesitate to hazard a guess. I have no idea from the research that I've done about this. It covered many, many years, decades, and I would think the number would be fairly high, although I think that it is also fair to say that the likelihood that the severity of damages that were done to Mr. Taylor represents a fairly narrow portion of the total people that would be subject to this. Because his PTSD was a combination of both participation in the program and his combat time? Well, there is certainly that, but I guess I look at him as being taken advantage of by the nondisclosures that were made and then the rather oppressive nondisclosure agreement that he was required to sign just put him in a Hobson's Choice in which he couldn't ask for the benefits to which he was entitled because of the threat of the secrecy agreement, which he at least perceived, and I think not unreasonably so, could have been enforced after his discharge. Okay, thank you. Okay, please continue. Well, Your Honor, to be candid, I'm not sure that there's anything else in my notes that warrants any further discussion. At this time, I'll reserve the balance of my time for rebuttal at this point. Okay, then we'll hear from the government. Mr. Grimaldi. May it please the Court, good morning, Your Honors. Certainly, Mr. Taylor comes before this Court as a very sympathetic appellant. Mr. Grimaldi, this is Judge Wallach. On page two of the red brief, in saying the government has such sympathy, you say Mr. Taylor, quote, was exposed to chemical agents at a U.S. Army facility, close quote, as part of the Edgewood Arsenal testing program. What do you mean by chemical agents? I want you to be specific. Was it VX? Seems most likely. VM? And tell me the side effects of those chemical agents. Well, Your Honor, I believe looking at the record, it's not possible to tell the exact chemical agents that Mr. Taylor was exposed to. A lot of the history on the Edgewood program and the chemical warfare testing program, and this might answer some questions about the numbers of veterans as well, is really detailed in the decision of the Northern District of California, which is the Vietnam Veterans of America, the CIA. The citation for that, I can give you a Westlaw citation because it was not published. That's 2013 Westlaw 3855688. And it goes through the history of the chemical warfare testing program, which I believe started after World War I, went all the way through World War II, and then teetered out in the 1970s. There were a lot of different types of chemicals, including mustard gas in the early days, that soldiers were exposed to in this program. But I'm concerned about, specifically, about Mr. Taylor. Do you agree that he was exposed to a nerve agent? I think that's what the record suggests, that that's a strong possibility. I'm not sure that the record shows that that's definitely what he was exposed to, but that's our best guess, Your Honor. Well, the government doesn't deny, as well as I could tell. I mean, these were all volunteers. They were well beyond, you might say, the call of duty to volunteer for exposure. I think it was generally known that Edgewood was experimenting with some quite dramatic chemicals. So that's, I think, not a matter of dispute. And, in fact, although perhaps it's not the issue here, but wouldn't one think that the government would have established a program? We can appreciate, perhaps, the need for the nondisclosure secrecy obligation that every one of these volunteers undertook while he was healthy, and that Taylor complied with what he had signed, rather than trying to figure out a way around it, perhaps on his own, just reading what he had signed and sticking with it, until the government itself voluntarily lifted the secrecy ban. But now what? Now what? Aren't there obligations somewhere? Perhaps this is a constitutional question. Yes, Your Honor, and the question here is, now what? I agree with that, Your Honor. What can Mr. Taylor do now? There's nothing wrong with the Veterans Court decision, because what the Veterans Court decision was about was finding that there was no equitable relief or statutory relief that they could provide for Mr. Taylor, that the system that he had attempted to rectify this issue wasn't going to provide him with the relief that he was requesting. And I can get into the equity and statutory relief in a moment, Your Honor, but what avenue is out there? Equity in the Veterans Benefits System lies with the Secretary under 38 U.S.C. 503, and that is an option for Mr. Taylor to pursue. The other option, of course, is, simply put, that 5110, individuals like Mr. Taylor slipped through the cracks with 5110, and Mr. Taylor conceived that in his briefing, that 5110 precludes him from getting statutory relief. Has the Secretary afforded equitable relief to any of the participants of this program? I'm not actually sure that any have asked for it or have received relief. I'm sorry, I do not have an answer for you on that. Let me ask you perhaps a more fundamental question. Why doesn't the Veterans Court have authority, jurisdiction, to grant equitable relief? I'm just thinking back in history. The Court of Federal Claims at one time thought that it didn't have this authority, and it turned out that that was inaccurate. Don't courts, whether they're under Article I or Article III, have some sort of presumed equitable authority unless it's explicitly withheld? I mean, maybe that's something that we in the government should give some attention to. Well, Your Honor, this court has already decided and determined in bursts in a presidential decision that the Veterans Court does not have equitable power to provide substantive monetary relief. Maybe we didn't get that right. Maybe that needs attention. Well, Your Honor, certainly that will have to be raised en banc to get attention because that is a presidential decision. That being said, I would disagree, Your Honor, that that is incorrect. What the Burris Court found was that the Congress specifically conferred equitable powers upon the Secretary in terms of federal benefits when it comes to 38 U.S.C. 503. The court did find that there was inherent, as you mentioned, Your Honor, equitable relief power, but that could only come from other statutes like the All-Risk Act and could not provide substantive monetary relief. Counsel, I have a hypothetical for you. The United States, as we have in the past, sends troops secretly into a country to carry out a mission, and a soldier is so badly injured in a firefight on that mission that he is no longer able to serve on active duty and he leaves the service. The Army tells him that the existence of the mission is classified and that he will be criminally prosecuted if he seeks any VA benefits. Despite that warning, he seeks VA benefits. Is his right to VA benefits a defense when he's charged with violation of the UCMJ and of the Espionage Act? Well, to be frank with you, Your Honor, I've never practiced in terms of military justice, so I know that it does differ from traditional litigation and criminal litigation because of the different relationship between a soldier and the United States as opposed to the citizen of the United States. You know, I would like to think that there would be a way for this individual to apply for VA benefits based on their medical records from the military to begin with because they would have been treated for their wounds, as you described, they were injured in combat while in the service. There wouldn't be really an argument whether or not the individual has service-connected injury in that instance. Beyond all that, Your Honor, whether they can apply for benefits and whether there can be a defense, there would be something the soldier could do at that time, and that would be to go to district court to say that the secrecy oath that you have in your hypothetical violated the individual's due process rights and get an injunction from a district court on that secrecy. And a district court can work that out whether or not a service branch can have its soldiers sign secrecy oaths that basically waive all their rights and so on and so forth. But that would be an injunction that would be non-monetary release. That would be in district court. That actually wasn't my hypothetical. It was to sign a secrecy oath. He was told he would be prosecuted. He was just told he would be prosecuted? Right, and then he is. Correct. And I apologize, Your Honor. I can't tell you what a proper defense is in a military court. I don't have that kind of knowledge base. Your Honor, turning to whether or not statutory release was available for Mr. Taylor, the parties do agree that 5110A1 prohibits an earlier effective date in this case. Mr. Taylor talks about constitutional relief as opposed to equitable or statutory relief, and an argument today says that the lines are blurred here. The secretary does not have authority to pay money out of appropriations otherwise that did not have permitted by statute. So there's no constitutional relief that the secretary could have provided Mr. Taylor but for what is available under 305. That would be equitable relief. In terms of the veterans court, again, their relief is constrained by whether or not they can provide equitable relief. There is no constitutional, freestanding constitutional claim that's available for the veterans court to entertain. Mr. Taylor in his briefing cites the 7261A1B, but I believe he means 3B because there's no 1B, for a freestanding constitutional jurisdiction. And, Your Honors, that section is about the scope of the veterans court's review and it limits it to constitutional issues considered by the secretary, the board of appeals, and the chairman of the board. So is the government's position that there's absolutely no avenue that can be pursued or just that Mr. Taylor hasn't thought of one? I'm going to be careful what I say here, Your Honor. 38 U.S.C. 503 provides the secretary with the possibility of providing equitable relief in certain cases. If Mr. Taylor is able to describe his situation under either the terms of Part A or Part B of 305, he can ask for equitable relief from the secretary. However, it is the secretary's discretion to provide that relief. It's not mandated that the secretary provide relief. It's a completely discretionary relief that can be provided. So to answer your question, if Mr. Taylor can articulate his claim under 503 and if the secretary exercises his discretion to provide the relief, there can be equitable relief given to Mr. Taylor. All right. Well, I'm guessing you're saying he can ask for the benevolence of the secretary, but there's no way that as far as comes to your mind at the moment, whereby even though there's absolutely no dispute or except there's no dispute that this was the cause of his injury. Yes, Your Honor. That is the Veterans Court decision that's on review here. The judges found that they had no relief they could provide Mr. Taylor, not that they thought that Mr. Taylor wasn't necessarily deserving of some sort of payment of money earlier than 2007, just that they were constrained. I believe they used that word constrained, that they could not provide any relief. And, you know, one quote that I would like to mention, Your Honors, and this is from the OPM v. Richmond case, is that Congress may always exercise its power to expand recoveries for those who rely on mistaken advice should it choose to do so. And this isn't a mistaken advice case, as Your Honors knows. It's about a secret CO. What the OPM v. Richmond case is saying is that if there is a situation where individuals slip through the cracks because of actions of the government Congress can act to amend the statute to provide them relief. In this scenario, I've seen Congress talking about the Edgewood Program as early as 1976 and certainly in the early 2000s. So it's been somewhere between 20 and 40 years or so where Congress has been aware of this issue and has not acted to amend 5110 or have another remedial law for individuals such as Mr. Taylor. That is also another avenue. Congress has to fix the system for people like Mr. Taylor as opposed to providing the Veterans Court with equitable power that it does not have. If the Court has no further questions, we'd ask the Court to affirm the decision of the Veterans Court. Any more questions, Judge O'Malley? No, thank you. Judge Wallach? No, thank you. All right, thank you. Then we'll hear from Mr. Carpenter. Thank you very much, Your Honor. I believe the government has been especially candid with this Court and is correct in almost every aspect when the government indicates that there is no statutory or equitable relief for Mr. Taylor in these circumstances. Therefore, the only relief that is available to him is constitutional relief. It seems to me that the government does not really challenge that there was a denial of due process based upon this secrecy agreement. And therefore, this Court ought to find that because there are no other avenues of relief, that his only avenue of relief is to seek the protection of the Constitution. And then the question becomes one of remedy. And as we tried to emphasize in our briefing, the courts have held that the concept of due process, particularly in relationship to its relief, must be flexible. And these are extraordinary circumstances, hopefully circumstances that are not going to be repeated. I believe that Judge Wallach's hypothetical is precisely comparable to the situation that is found here. He was faced with a Hobson's choice of either violating a secrecy agreement or going ahead and trying to get his benefits and making a disclosure that would result in the violation of that secrecy agreement and his potential prosecution. That is an untenable position to put any service member in. And if there is any validity whatsoever to the thumb on the scale of justice for veterans that has been noted by the Supreme Court, this is the circumstance in which that has to take real form and provide real relief. So I believe the question is one of remedy. How does this Court provide due process relief? And what we're simply asking for is for this Court to find that based upon the due process violation, that the provisions of 5110 be found to have been superseded by the violation of the Constitution. And that as a result, the Secretary should be required to consider his application as having been made but for the secrecy agreement and that this matter be returned to the Board, to return to the agency to determine the extent and degree of his disability from the day following discharge to his current effective date of 2007. That seems to be the only reasonable remedy and one that really, I do not believe, offends the statutory scheme or the notion that the Secretary is compelled to do something that he's not able to do by statute. These are just not circumstances that are contemplated by the statutory scheme. There is no remedy for this, for instance, in a clear and unmistakable error notion because there was no prior decision because there was no application. It is that preclusion of the opportunity to present the application that really creates the due process violation. Unless there's further questions from the Court, I'm prepared to submit the matter. Any questions? Judge O'Malley? No, thank you. Judge Wallach? No, thank you. Okay, thank you. Thank you both. The case is taken under submission.